# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### CIVIL ACTION NO. 3:19-CV-349-GCM-DCK

| | | |
|---|---|---|
| **AARON ZECKOSKI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| **ELSEVIER, INC., RELX INC., RELX** | ) | |
| **INC. EMPLOYEE BENEFITS** | ) | |
| **COMMITTEE, and SUPPLEMENTAL** | ) | |
| **RELX INC. US SEVERANCE PLAN,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**THIS MATTER IS BEFORE THE COURT** on "Defendants' Motion For Summary Judgment" (Document No. 33) and "Plaintiff's Motion For Summary Judgment" (Document No. 35), both filed February 26, 2021. These motions have been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b) and are now ripe for disposition. Having carefully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that Defendants' motion be granted and Plaintiff's motion be denied.

## I. BACKGROUND

Plaintiff Aaron Zeckoski ("Plaintiff" or "Zeckoski") filed a Complaint against Elsevier Inc. ("Elsevier"), RELX Inc. ("RELX"), the RELX Inc. Employee Benefits Committee ("the Committee"), and the Supplemental RELX Inc. US Severance Plan ("the Plan") (collectively, "Defendants") on July 19, 2019. (Document No. 1). In his Complaint, Plaintiff brings four claims: (1) a claim for wrongful denial of benefits under the Employee Retirement Income Security Act ("ERISA") at 29 U.S.C. § 1132(a)(1)(B) ("section 502(a)(1)(B)") against RELX, the Committee, and the Plan; (2) a claim (pled in the alternative to his first claim) for other appropriate equitable

relief under ERISA at 29 U.S.C. § 1132(a)(3) ("section 502(a)(3)") against RELX and the Committee for breach of fiduciary duty by failing "to monitor Elsevier in providing misrepresentations to Plaintiff regarding the Plan terms and the fact that Elsevier's statements to third parties would affect Plaintiff's entitlement to benefits under the Plan" and against Elsevier for misrepresenting the terms of the Plan; (3) a claim for discharge on account of interference with Plaintiff's rights under the Plan under ERISA at 29 U.S.C. § 1140 ("section 510") against Elsevier; and (4) a claim for attorneys' fees under ERISA at 29 U.S.C. § 1132 ("section 502(g)"). Id. at pp. 5-10.

Plaintiff's claims arise out of the circumstances surrounding the end of his employment with Elsevier, which Plaintiff alleges was "an affiliate of RELX," the sponsor of the ERISA-governed employee welfare benefit Plan. Id. at pp. 1-2. The Committee, Plaintiff alleges, "is named as the plan administrator…in the Plan document and summary plan description." Id. at p. 2. As Plan Administrator, the Committee allegedly "has authority to grant or deny benefits." Id. at p. 3. "The Plan offers severance and other benefits to covered participants/eligible employees whose employment is *involuntarily terminated for any reason other than for cause*." Id. (emphasis added); see (AR0003). An employee is *not* eligible for severance benefits – because he or she is not considered to be involuntarily terminated without cause – when he or she resigns. (AR0005; AR0029). Moreover, an employee would also not be eligible for severance benefits if he or she were terminated for cause – a determination that, according to the terms of the Plan, is to "be made by an Employee's Employer in its sole discretion." (AR0002). "Cause" under the Plan could include

> (i) misconduct or negligence in connection with the performance of [an employee's] job duties; (ii) engaging in or threatening to engage in conduct detrimental to the best interests of the Company or a

> Company affiliate…[or] (viii) material violation of the [RELX]
> Code of Ethics and Business Conduct…

(AR0002). As stated, even though Elsevier would be the entity charged with making a cause determination with respect to an employee's termination, the Committee is vested according to the Plan's terms with "discretionary and final authority to interpret and implement the provisions of [the] Plan including, without limitation, authority to determine eligibility for benefits and the amount of benefits." (AR0016).

Plaintiff's employment with Elsevier began in August 2014 as a Lead Architect, but he had been promoted to Vice President of Software Engineering – a position in which he had been working since approximately May 2015 – at the time his employment ended on July 19, 2018. (Document No. 1, p. 3). According to Defendants' brief in support of their motion for summary judgment, two incidents of inappropriate conduct with respect to female colleagues gave rise to Plaintiff's employment with Elsevier ending. (Document No. 34, pp. 10-11). The first incident, Defendants describe, occurred in October 2017 during a conference call when Plaintiff allegedly made comments to a female employee who was late to the call. Id.; (AR0051; AR0112). Those comments included "I should punch her in the crotch," and "I should kick her in the crotch." (AR0112). The second incident occurred "during a work-related dinner" at which Zeckoski again made inappropriate comments to a female colleague. (AR0051). The dinner occurred approximately eight months following the first incident, and Zeckoski made the remark upon the female's return to the table after using a unisex restroom, commenting "that if she touched the faucet after a man had used it, 'it's like you've touched his junk.'" Id.

Defendants indicate that given the close proximity in time between the two incidents and the inappropriate nature of the comments, Elsevier would terminate Zeckoski's employment for cause but would give him the option to voluntarily resign instead. (Document No. 34, p. 11).

3

Zeckoski apparently "chose to resign" on July 19, 2018. Id. at p. 10-11. According to Plaintiff, "Elsevier did not draft or provide Plaintiff with a resignation statement to sign," and he himself "never wrote or signed any resignation letter." (Document No. 35-1, pp. 2-3). Elsevier allegedly drafted a Separation Agreement but Plaintiff did not sign it. (AR0097). Zeckoski then sought severance benefits on October 8, 2018. Id.; (Document No. 1, p. 4).

In a letter dated January 4, 2019, the Committee denied Zeckoski's claim for severance benefits because Plaintiff resigned, and even if he had not resigned, he would have been terminated for cause. (Document No. 34, p. 13); (AR0076-79). On March 1, 2019, Zeckoski appealed the Committee's denial of his claim for severance benefits. (AR0084). In his appeal, Zeckoski argued that he did not resign, but rather, Elsevier "suggested that although it [] terminated [him], it could tell third parties that [he] had resigned from [his] employment." (AR0093). Zeckoski further stated that he "questioned whether the Company's representation to other third parties that [his] termination was a resignation would make any financial difference…and was told it would not." Id. He therefore agreed to the arrangement. Id. Zeckoski also denied making allegedly inappropriate comments to female colleagues. (AR0085).

By letter dated May 14, 2019, the Committee denied Zeckoski's appeal of his original denial of his claim for severance benefits. (AR0149). The Committee stated the sources that it relied upon in making its determination to deny the appeal, indicating that it reviewed "declarations of three Company employees present…during the meeting when Claimant was informed of his termination…[each of whom] state[d] that Claimant chose to voluntarily resign." (AR0150); see (AR0114; AR0116; AR0118). Furthermore, Defendants indicate that the Committee reviewed "documents related to litigation initiated by [Zeckoski] with respect to an unrelated claim," in

4

which he "admitted that he voluntarily resigned from his position of employment with the Company."[1]  (AR0150);  see (AR0121 "[o]n or around July 19, 2018, Zeckoski resigned").

On December 2, 2020, the Honorable Graham C. Mullen adopted the undersigned's Memorandum And Recommendation (Document No. 21), which recommended that "Defendants' Motion To Dismiss The Complaint And In The Alternative For Summary Judgment" (Document No. 11) be denied.  (Document No. 27).  On February 26, 2021, both Plaintiff and Defendants filed the pending cross-motions for summary judgment, including "Defendants' Motion For Summary Judgment" (Document No. 33) and "Plaintiff's Motion For Summary Judgment" (Document No. 35).  Also on February 26, 2021, Defendants filed a "Memorandum Of Law In Support Of Their Motion For Summary Judgment" (Document No. 34), and Plaintiff filed a similar "Brief In Support Of Motion For Summary Judgment" (Document No. 35-1).  On April 6, 2021, Defendants filed their "Memorandum Of Law In Opposition To Plaintiff's Motion For Summary Judgment" (Document No. 38), and Plaintiff filed his "Brief In Response To Defendants' Motion For Summary Judgment" (Document No. 39).  On April 23, 2021, Defendants filed their "Reply Memorandum Of Law In Support Of Their Motion For Summary Judgment" (Document No. 40), and Plaintiff filed his "Reply Brief In Support Of Plaintiff's Motion For Summary Judgment" (Document No. 41).  The pending motions are now ripe for review and a recommendation to the presiding district judge.

## II.  STANDARD OF REVIEW

The standard of review here is familiar.  Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  The movant has the "initial responsibility of informing

---

[1] The litigation related to Plaintiff's claim for money allegedly owed to him on account of post-termination services that he provided to Elsevier.  (Document No. 35-1, p. 3).  The "lawsuit was ultimately settled."  Id.

the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted). Only disputes between the parties over material facts (determined by reference to the substantive law) that might affect the outcome of the case properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." Id.

Once the movant's initial burden is met, the burden shifts to the nonmoving party. Webb v. K.R. Drenth Trucking, Inc., 780 F. Supp. 2d 409 (W.D.N.C. 2011). The nonmoving party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing there is a genuine issue for trial." Anderson, 477 U.S. at 248. In deciding a motion for summary judgment, a court views the evidence in the light most favorable to the non-moving party, that is, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255. At summary judgment, it is inappropriate for a court to weigh evidence or make credibility determinations. Id.

When considering cross-motions for summary judgment, a court evaluates each motion separately on its own merits using the standard set forth above. See Rossignol v. Voorhaar, 316 F.3d 516, 522 (4th Cir. 2003); accord Local 2-1971 of Pace Int'l Union v. Cooper, 364 F. Supp. 2d 546, 554 (W.D.N.C. 2005). Both Plaintiff and Defendants have moved for summary judgment, and the Court will analyze each motion in turn.

Moreover, "ERISA benefit actions are usually adjudicated on summary judgment rather than at trial." Skinder v. Fed. Express Long Term Disability Plan, 2021 WL 1377982, at *1

6

(W.D.N.C. Apr. 12, 2021) (citing <u>Vincent v. Lucent Techs., Inc.</u>, 733 F. Supp. 2d 729, 733-34 (W.D.N.C. 2010)); <u>see also</u> <u>Leahy v. Raytheon Co.</u>, 215 F.3d 11, 17-18 (1st Cir. 2002) ("In an ERISA benefit denial case, trial is usually not an option…[the district court in ERISA benefits denial cases] does not take evidence, but, rather, evaluates the reasonableness of an administrative determination in light of the record compiled before the plan fiduciary").

"The scope of judicial review in an action challenging an administrator's coverage determination under section 1132(a)(1)(B) turns on whether the benefit plan vests the administrator with discretionary authority." <u>Skinder</u>, 2021 WL 1377982, at *6 (citing <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 115 (1989)). According to the Supreme Court's decision in <u>Firestone</u>, "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." 489 U.S. at 115. If the plan documents *do* grant the administrator or fiduciary the requisite discretion, "the courts' review is for abuse of discretion" rather than *de novo* review. <u>Woods v. Prudential Ins. Co. of Am.</u>, 528 F.3d 320, 322 (4th Cir. 2008). The abuse of discretion standard of review applies only when "the plan manifest[s] a clear intent to confer such discretion." <u>Id.</u> If there is any ambiguity as to whether the plan documents grant discretion, the ambiguity "is construed against the drafter of the plan, and it is construed in accordance with the reasonable expectations of the insured." <u>Gallagher v. Reliance Standard Life Ins. Co.</u>, 305 F.3d 264, 269 (4th Cir. 2002) (quoting <u>Bynum v. Cigna Healthcare, Inc.</u>, 287 F.3d 305, 313-14 (4th Cir. 2002)).

### 1. *De Novo* Standard Of Review

Under the *de novo* standard of review, a district court must "make [its] own independent determination of whether [Plaintiff] was entitled to [] benefits" under the ERISA plan. <u>Johnson v.</u>

7

Am. United Life Ins. Co., 716 F.3d 813, 819 (4th Cir. 2013). Such a standard concerns "[t]he correctness, not the reasonableness, of [the Defendant's] denial of [] benefits." Id. This standard of review does not limit a court "to considering only the reasonableness of the decision and reasoning of the claims administrator;" rather, a court considers "the meaning of the Plan terms in the first instance" and conducts its own review to determine the correctness of the claims administrator's decision. Id. at 824.

### 2. Abuse Of Discretion Standard Of Review

"Under the abuse of discretion standard, this Court will uphold the decision of a plan administrator if the decision is reasonable, even if this Court would have reached a contrary conclusion upon an independent review." Skinder, 2021 WL 1377982, at *6. The abuse of discretion standard of review counsels that "this Court should affirm a discretionary decision of a plan administrator if it is the result of a 'deliberate, principled reasoning process' and is supported by 'substantial evidence.'" Helton v. AT&T Inc., 709 F.3d 343, 351 (4th Cir. 2013) (quoting Williams v. Metro. Life Ins. Co., 609 F.3d 622, 629 (4th Cir. 2010)). Substantial evidence "is more than a scintilla, but less than a preponderance." Hensley v. Int'l Business Machines Corp., 123 F. App'x 534, 537 (4th Cir. 2004).

The Fourth Circuit has promulgated eight factors to help district courts in their analysis of whether a denial of benefits was reasonable. Booth v. Wal-Mart Stores, Inc. Assocs. Health and Welfare Plan, 201 F.3d 335, 342 (4th Cir. 2000). These non-exclusive factors include:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the

8

exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

Id. at 342-43. However, "[a]ll eight Booth factors need not be, and may not be, relevant in a given case." Skinder, 2021 WL 1377982, at *7 (citing Helton, 709 F.3d at 357).

Importantly, "when an administrator or fiduciary with discretion is operating under a conflict of interest such that its decision to award or deny benefits impacts its own financial interests, 'that conflict must be weighed…in determining whether there is an abuse of discretion.'" Bernstein v. CapitalCare, Inc., 70 F.3d 783, 787 (4th Cir. 1995) (quoting Firestone Tire & Rubber Co., 489 U.S. at 115). This conflict of interest factor, however, is "one factor among many" in the evaluation of abuse of discretion. Champion v. Black & Decker (U.S.) Inc., 550 F.3d 353, 358 (4th Cir. 2008).

## III.  DISCUSSION

### 1.  Wrongful Denial Of Benefits Claim Under ERISA Section 502(a)(1)(B)

#### a.  Standard Of Review Applicable To Wrongful Denial Of Benefits Claim

Plaintiff and Defendants disagree on the appropriate standard of review to apply in evaluating the cross-motions for summary judgment on the section 502(a)(1)(B) claim. Plaintiff contends that the *de novo* standard of review applies because "the Committee is not a 'person' under the ERISA definition, [and therefore] it could not be a fiduciary and therefore the administrator of the Plan." (Document No. 35-1, p. 5). Under Plaintiff's logic, "per ERISA's default rules [then], RELX, as the entity sponsoring the Plan, was the default Plan Administrator." Id. But, Plaintiff argues, "the Plan document provides discretion only to the Committee, not RELX." Id. Thus, Plaintiff's argument is that since "the Plan does not provide discretion to RELX and because the Committee is not a 'person' permitted to adjudicate Plaintiff's claim under ERISA, the denial must be reviewed under the *de novo* standard." Id.

9

Defendants, on the other hand, contend that the abuse of discretion standard of review applies. (Document No. 34, p. 20). In contrast to Plaintiff, Defendants cite case law to argue that the Committee *is* a person within the meaning of the ERISA statute and can properly be designated the Plan Administrator. (Document No. 38, pp. 8-9). Therefore, Defendants contend that the Plan's grant of discretion to the Committee to determine eligibility for benefits and the amount of such benefits and to interpret the Plan terms mandates that the Court review Plaintiff's claim for wrongful denial of benefits under section 502(a)(1)(B) under the abuse of discretion standard. Id.

The undersigned is persuaded by Defendants' argument – Plaintiff cannot plausibly contend that the Committee does not qualify as a "person" within the meaning of the ERISA statute, particularly given the Fourth Circuit's explicit guidance about this precise issue. Tatum v. RJR Pension Inv. Comm., 761 F.3d 346, 370-71 (4th Cir. 2014). As Defendants point out, the case law that Plaintiff cites in support of his proposition all predated the Tatum decision – and thus, those cases are no longer good law on this issue. (Document No. 38, p. 10); (Document No. 35-1, p. 5). Plaintiff, in response, attempts to make the argument that the Tatum decision "is in direct conflict with U.S. Supreme Court precedent, which holds that ERISA's definitions must be narrowly construed." (Document No. 39, pp. 2-3). This argument is without merit. The Court's reading of the Supreme Court decision that Plaintiff cites as support for its argument is in line with Defendants' perspective. Defendants contend that Plaintiff "slings a 'Hail Mary' in asking this Court to overrule [] Fourth Circuit binding precedent based on a Supreme Court case that addresses ERISA's statute of limitations and is not remotely on point." (Document No. 40, p. 5); see Intel Corp. Inv. Policy Comm. v. Sulyma, 140 S.Ct. 768 (2020).

Under the ERISA statute at 29 U.S.C. § 1002(9), a "person" includes "an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate,

unincorporated organization, association, or employee organization." The Fourth Circuit, though, has interpreted this statutory provision to mean that although it "does not expressly list 'committees' does not mean that committees cannot be 'persons who are fiduciaries' under ERISA." Tatum, 761 F.3d at 370-71. Indeed, in the Tatum case, the Court expressly held that committees can properly be responsible for Plan Administration – just as the Plan provides for in this case. 761 F.3d at 371; see (AR0016) ("[t]he Committee shall have discretionary and final authority to interpret and implement the provisions of this Plan, including, without limitation, authority to determine eligibility for benefits and the amount of benefits under this Plan"). Furthermore, here, the Plan vests "overall administration of this Plan" with the "Committee." (AR0016); see also (AR0038) (RELX Inc. Employee Benefits Committee is explicitly listed in the Summary Plan Description as the "Plan Administrator"). The Court finds that there could be no clearer grant of discretionary authority to the Committee to vest it with duties of Plan Administrator than currently exists in the language of the Plan. See 29 U.S.C. § 1002(16)(A)(i) (defining administrator to mean "the person specifically so designated by the terms of the instrument under which the plan is operated").

Thus, in accordance with Fourth Circuit law and Department of Labor regulations and interpretations, the undersigned will find that the Committee is a person that can properly be designated as the Plan Administrator. Tatum, 761 F.3d at 370-71; see 29 C.F.R. § 2509.75-5 (stating that committees may be named fiduciaries under ERISA-governed employee benefit plans). Therefore, since the Plan vests the Committee with "discretionary authority to determine eligibility for benefits or to construe the terms of the plan," the Court will proceed with its analysis of Plaintiff's section 502(a)(1)(B) claim under the abuse of discretion standard of review. Firestone, 489 U.S. at 115. Notably, Plaintiff makes no argument to suggest that the Plan does *not*

vest the Committee with such discretion; rather, his argument centers upon the Committee being an improper plan administrator under the definition of "person" in the ERISA statute. Given the finding that the Committee is a proper plan administrator under ERISA, the abuse of discretion standard applies to this Court's review. <u>See</u> (Document No. 35-1, p. 5) ("the Plan document provides discretion only to the Committee, not RELX"); (Document No. 40, p. 5 ) ("Zeckoski does not dispute that the Benefits Committee is vested with the discretion to decide his claim for severance benefits).

**b. Whether The Benefits Committee Abused Its Discretion In Denying Plaintiff's Claim For Severance Benefits**

In order to evaluate "whether a plan administrator abused its discretion," the Court uses an eight-factor test promulgated by the Fourth Circuit in <u>Booth</u> to guide its analysis. <u>Skinder</u>, 2021 WL 1377982, at *7 (W.D.N.C. Apr. 12, 2021) (citing <u>Booth</u>, 201 F.3d at 342-43). Moreover, it bears restating that under the abuse of discretion standard of review in the ERISA wrongful denial of benefits context, "this Court will uphold the decision of a plan administrator if the decision is reasonable, even if this Court would have reached a contrary conclusion upon an independent review." <u>Id.</u> at *6. The abuse of discretion standard, the Fourth Circuit has indicated, "equates to reasonableness…an administrator's decision is reasonable if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." <u>Evans v. Eaton Corp. Long Term Disability Plan</u>, 514 F.3d 315, 322 (4th Cir. 2008). The Court, though, will not evaluate every <u>Booth</u> factor – as not every factor is relevant here. <u>See</u> <u>Skinder</u>, 2021 WL 1377982, at *7 ("[a]ll eight <u>Booth</u> factors need not be, and may not be, relevant in a given case") (citing <u>Helton</u>, 709 F.3d at 357). The factors that the Court will analyze here include: the first, third, fourth, fifth,

12

and sixth factors.[2]  Importantly, too, the Court will not evaluate evidence outside the administrative record *unless* that evidence "was known to the plan administrator when it rendered its benefits determination" since the standard of review is abuse of discretion.  Helton, 709 F.3d at 356.

### i. <u>Booth</u> Factor (1) – The Language of the Plan

According to the Plan's terms, only those employees who are terminated for a reason other than cause are eligible for severance benefits under the Plan – and employees who resign are excluded from the pool of eligible employees.  (AR0003;  AR0005).  Thus, following a determination that Plaintiff resigned – and, even if he did not, that he would have been terminated for cause – the Committee's denial of Plaintiff's claim for severance benefits was entirely reasonable because he did not fall under the Plan's definition of an eligible employee according to the express terms of the Plan.  See (AR0077) ("[e]ven if Claimant had rejected the offer to resign (which he did not), he would still be ineligible for Benefits under the Plan because he would have been terminated for conduct that amounts to 'Cause' under the Plan").  The Court therefore finds that the Committee's denial of benefits should be upheld under the first <u>Booth</u> factor.  201 F.3d at 343.  The documentary support for the Committee's determination will be addressed in the next section on the third <u>Booth</u> prong.

---

[2] The Court will not address the second, seventh, and eighth <u>Booth</u> factors because they are not relevant here.  <u>See</u> 201 F.3d at 342-43.  First, given that the language of the Plan does not address any overarching "purposes and goals," the undersigned will not hypothesize about whether the Committee's decision satisfied this Booth factor.  Id. at 342; <u>see</u> (AR001-0020).  As to the seventh <u>Booth</u> factor regarding an external standard of review, the Court finds that there is not an external standard of review to guide the Committee's benefits decisions, and as such, no analysis on this factor is necessary.  201 F.3d at 342-43.  Although Plaintiff argues that the external standard is the "cause" definition in the Plan, it is not the Committee's role to question the legitimacy of Elsevier's decision that it was time for Plaintiff's employment with the company to end.  Rather, whether there is cause for termination is committed to the "sole discretion" of Elsevier.  (AR0002).  Finally, with respect to any conflict of interest that Plaintiff contends affected the Committee's decision, the Court will not proceed with analysis on this factor.  (Document No. 35-1, p. 15); <u>see Booth</u>, 201 F.3d at 343.  Plaintiff has offered nothing more than an assertion that a structural conflict exists because RELX "was responsible for both evaluating and paying claims under the Plan."  Id.  But, while this conflict "may exist, there is no evidence in the record that [the Committee's] decision was influenced by a conflict...and Plaintiff...has not presented any evidence in that regard."  <u>Refaey v. Aetna Life Ins. Co.</u>, 467 F. Supp. 3d 328, 346 (W.D.N.C. 2020).

### ii. <u>Booth</u> Factor (3) – The Adequacy of the Materials Considered and the Degree to Which They Support The Benefits Denial

According to Defendants, the Committee considered a variety of evidence in the Administrative Record to uphold its finding that Zeckoski resigned his employment – and was therefore not eligible for severance benefits. The evidence that the Committee considered included: (1) the Plan itself and the Summary Plan Description; (2) "all of the information and documentation provided by Zeckoski in support of his claim, *i.e.*, his two letters and self-serving declaration;" and (3) "all of the information and documentation provided by Elsevier related to the reasons why Zeckoski is no longer employed by Elsevier, *i.e.*, the written warning issued to Zeckoski, declarations of three Elsevier employees, the separation agreement, and Zeckoski's complaint in another litigation." (Document No. 34, p. 22). The undersigned highlights that Zeckoski's admission in his Complaint in separate, unrelated litigation – that is part of the Administrative Record in this case – is particularly revealing and provides more than the "scintilla" of evidence necessary for the Court to find here that the Committee's determination was supported by substantial evidence. (AR0121) ("[o]n or around July 19, 2018, Zeckoski resigned"); <u>see</u> <u>Hensley</u>, 123 F. App'x at 537 ("[s]ubstantial evidence is more than a scintilla, but less than a preponderance"). In combination with three Elsevier employees' declarations that Zeckoski resigned, the undersigned agrees with Defendants that to discredit Plaintiff's "self-serving" declaration was entirely reasonable for the Committee to do in light of the overwhelming evidence pointing to Zeckoski resigning. <u>See</u> (AR00114; AR00116; AR00118); (Document No. 34, p. 22).

Thus, in contrast to what Plaintiff advocates – that the Committee "ignore[ed] [] the declaration of Plaintiff" (which it did not) – Defendants simply instead found that the balance of

the evidence in the Administrative Record tipped in favor of a finding that Zeckoski resigned. (Document No. 35-1, p. 12). The third <u>Booth</u> factor thus favors Defendants. 201 F.3d at 342.

### iii. <u>Booth</u> Factors (4) and (5) – Consistency of the Committee's Denial With Plan Terms And Whether The Decision-Making Process Was Reasoned And Principled

With respect to the fourth <u>Booth</u> factor, the undersigned highlights that only part of that factor is relevant here to guide the Court's analysis. That factor asks the Court to inquire into "whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan." <u>Booth</u>, 201 F.3d at 342. In this case, only the consistency of the Committee's determination with Plan terms is relevant, as here the Defendants state that "the Benefits Committee has not previously denied a claim for severance benefits where…an individual had resigned in lieu of being terminated for conduct amounting to Cause…[because] the claim was the first of its kind." (Document No. 38, p. 13). Here, the Plan language unambiguously states that eligible employees do not include those employees who either resign or are terminated *for cause*. (AR0003; AR0005). Thus, the Defendants' explanation in its brief in support of its motion for summary judgment is persuasive to support its finding consistent with the Plan's terms such that denying benefits was reasonable in accordance with <u>Booth</u> factor four:

> The Benefits Committee first concluded that Zeckoski had resigned his employment with Elsevier because: (i) the Benefits Committee received sworn statements of three senior-level Elsevier employees stating that Zeckoski chose to resign…and (ii) Zeckoski admitted in another litigation that he had resigned. [] In light of this overwhelming evidence, the Benefits Committee rejected Zeckoski's post-hoc, self-serving statement that he did not resign. [] As discussed above, although Zeckoski's resignation was enough to support the Benefits Committee's conclusion to deny his claim for benefits, the Benefits Committee also determined that Zeckoski was not eligible for benefits because Elsevier would have terminated his employment for conduct amounting to Cause under the Plan based

15

on the two incidents involving highly inappropriate conduct with two different female employees that occurred just eight months apart.

(Document No. 34, pp. 24-25).

The conduct that would have led to termination for cause had Zeckoski not resigned were the two instances of inappropriate conduct with respect to female colleagues, which Elsevier "determined…was in violation of the RELX non-discrimination and anti-harassment policy and the RELX Code of Ethics and Business Conduct." (Document No. 34, p. 13). That determination lines up with the explicit terms of the Plan, which places the determination of "cause" in the employer's (here, Elsevier's) "sole discretion." (AR0002). Grounds for termination for cause would include "engaging in…conduct detrimental to the best interests of the Company or….material violation of the [RELX] Code of Ethics and Business Conduct," among other activities. Id. The undersigned thus finds that the Committee's determination to deny Plaintiff severance benefits accords with the Plan's terms and thus satisfies Booth factor four.

Finally, with respect to whether Booth factor five supports the Committee's denial of Plaintiff's claim for severance benefits and his appeal – that is, "whether the decisionmaking process was reasoned and principled" – the undersigned finds that analysis demonstrates that Defendants are favored on this prong. Booth, 201 F.3d at 342. The Court will not disturb a plan administrator's finding where the determination "rest[s] on good evidence and sound reasoning; and [it] result[s] from a fair and searching process." Evans, 514 F.3d at 322-23. Furthermore, "[a] searching process does not permit a plan administrator to shut his eyes to the most evident and accessible sources of information that might support a successful claim." Harrison v. Wells Fargo Bank, N.A., 773 F.3d 15, 21 (4th Cir. 2014). That does not mean, though, that there is a heavy burden on plan administrators, for "[n]othing [] requires plan administrators to scour the

16

countryside in search of evidence to bolster a petitioner's case." Id. at 22. Thus, a fair and searching process does not "require[] plan administrators to go fishing for evidence favorable to a claim when it has not been brought to their attention that such evidence exists." Gaither v. Aetna Life Ins. Co., 394 F.3d 792, 804 (10th Cir. 2004).

The Court finds that the Committee's decision-making process was reasonable and principled in accordance with the fifth Booth factor. 201 F.3d at 342. Not only, as explained above, was the Committee's decision consistent with Plan terms, but so, too, did it consider a variety of evidence and make further inquiries of Elsevier about Plaintiff's resignation of employment when he appealed. As Defendants state, "[u]pon receiving Zeckoski's appeal for severance benefits, the Benefits Committee inquired of Elsevier to see if it had additional information to provide that was relevant to Zeckoski's appeal." (Document No. 34, p. 14). Pursuant to the request for additional information, "Elsevier provided the Benefits Committee with sworn statements from three Elsevier senior-level employees who were present when Zeckoski was given the option to resign in lieu of being terminated for cause…[each of whom] corroborated [that]…Zeckoski chose to resign." Id. at p. 15. Furthermore, "Elsevier informed the Benefits Committee to the fact that Zeckoski had filed a complaint against Elsevier…and, in his own complaint," he admitted that he resigned. Id. The Committee considered such new evidence on appeal in addition to Zeckoski's own declaration that he did not resign. Id. at p. 16.

Plaintiff wrongly suggests that "[t]he Committee abused its discretion because it failed to make any reasonable inquiry…regarding Elsevier's alleged cause determination and the alleged May 2018 events…[and] no witness statements [are in the Administrative Record] regarding Plaintiff's alleged inappropriate conduct." (Document No. 39, p. 15). First, given the case law regarding the standard of review, the Committee satisfied its burden to conduct a fair and searching

17

process – it was not required to solicit statements from all present at the conference call or the work-related dinner at which Zeckoski made inappropriate comments because to do so would be to undermine Elsevier's "sole discretion" in making a cause determination. (AR0002). That kind of inquiry, too, would require the Committee to conduct exactly the kind of "scour[ing] [of] the countryside" for evidence in favor of Plaintiff's claim that the Fourth Circuit has counseled is unnecessary. Harrison, 773 F.3d at 22.

Plaintiff's suggestion that the Court should thus consider Mary Millar's declaration, who allegedly "was at the dinner where the alleged May 2018 incident occurred" is misplaced. (Document No. 39, p. 15). For the Committee to have been expected to interview those present at the alleged incidents to find a crumb in favor of Plaintiff's theory that he should not have been terminated for cause because he did not do anything inappropriate both misunderstands the standard of review that does not require such re-evaluation of the termination decision and misses the mark entirely more generally. Even if the Court were to consider this evidence – which it will not do because only evidence that was known to the plan administrator is appropriate for Court consideration on abuse of discretion standard of review – the result here would not change. See Helton, 709 F.3d at 356. The question is not whether Elsevier got the decision right about whether to end Plaintiff's employment; the question instead is whether, in light of Plaintiff's resignation, was the Committee reasonable in its determination to deny Plaintiff severance benefits. The Court finds that at least on the fifth Booth factor, the Committee has satisfied its burden to demonstrate that it had a reasoned and principled decision-making process. 201 F.3d at 342.

### iv. Booth Factor (6) – Whether The Decision Was Consistent With ERISA's Substantive and Procedural Requirements

The Court will next proceed with analysis on the sixth <u>Booth</u> factor – "whether the decision was consistent with the procedural and substantive requirements of ERISA." 201 F.3d at 342. Under that standard, "ERISA requires that plan participants be notified in writing of any benefit denial, and that they be given an opportunity for a full and fair hearing by those denying the claim." <u>Refaey</u>, 467 F. Supp. 3d at 346 (quoting <u>Fuqua v. Tarmac of Am., Inc.</u>, 228 F. Supp. 2d 755, 762 (E.D. Va. 2002)). The written denial letter must "set[] forth the specific reasons for such denial, written in a manner calculated to be understood by the participant," and the plan administrator must also "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. §§ 1133(1), (2).

As Defendants state, "[t]he Plan contains detailed procedures that a participant may follow to make a claim for severance benefits, including procedures for submitting a claim and appeal, as well as obtaining information that the Benefits Committee considered in connection with its decision." (Document No. 34, p. 25) (citing AR0017-18). In this case, both the initial letter denying Plaintiff's claim for severance benefits and the follow-up letter denying Plaintiff's appeal specify the reasons for the benefits denial – namely, that Plaintiff "voluntarily resigned; therefore, under the terms of the Plan, he is ineligible for severance benefits." (AR0077; AR0104). The letters recounted the factual evidence it considered in finding that Plaintiff did resign his employment. <u>Id.</u> Furthermore, the letters also indicated that "the Company made the determination that the misconduct at issue amounted to Cause under the terms of the Plan; therefore, termination by the Company on this basis would also make Claimant ineligible for benefits under the Plan." (AR0077-78; AR0104-05). Furthermore, the letters enumerated the

various Plan provisions that were at issue and which the Committee harmonized with the underlying facts. (AR0076-77; AR0103-04).

Just as in the Refaey case, here, the Committee "carefully reviewed Plaintiff's claim and accepted all evidence [he] elected to present in support of [his] claim, and [it] issued a written decision explaining the reasoning underlying the denial of benefits." 467 F. Supp. 3d at 346. Additionally, the Committee invited Plaintiff to submit additional documentation to support his appeal. (AR0078).[3] In order to fully evaluate Plaintiff's appeal, the Committee "inquired of Elsevier to see if it had additional information to provide that was relevant to Zeckoski's appeal." (Document No. 34, p. 14). That additional information included the declarations of three employees who corroborated the narrative that Zeckoski resigned. Id. at p. 15. The Court agrees with Defendants that "[t]he fact that the three declarations were not obtained until the administrative appeal level establishes that the Benefits Committee conducted a thorough review and evaluation of Zeckoski's administrative appeal – not that the Benefits Committee's decision-making process was flawed." (Document No. 38, p. 15). The Court finds that the standard and the case law interpreting the standard support a finding that the Committee conducted a full and fair review in accordance with the sixth Booth factor.[4]

---

[3] Notably, the Court's review of the initial denial letter does suggest that the letter does not perfectly comply with the relevant regulations that require "[a] description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary." 29 C.F.R. § 2560.503-1(g)(1)(iii). The Fourth Circuit, though, found that in such a scenario, the plan administrator nonetheless had not abused its discretion, for the regulation "does not direct ERISA plan administrators to provide claimants with a formula for obtaining benefits." Donnell v. Metro. Life Ins. Co., 165 F. App'x 288, 296 (4th Cir. 2006). Where the letter "substantially complied," there was no disruption to the Court finding no abuse of discretion. Id.

[4] The Court notes that Plaintiff's argument that he was not provided with "all 'relevant' documents, as required by the ERISA regulations" in response to his request is contradicted by the Administrative Record. (Document No. 39, p. 14); see (AR0082-83). The Administrative Record confirms that Plaintiff was provided with documents "relevant to his claim for benefits" that he requested. (AR0082-83). There is thus no plausible argument that the Committee violated ERISA claims regulations, for the Committee provided Plaintiff with a full and fair review as required. See 29 C.F.R. §§ 2560.503-1(h)(2)(iii), (m)(8). Furthermore, as Defendants note, Zeckoski "was invited to respond in writing with authority for his request if he believed he was entitled to additional information, but [he] never responded." (Document No. 40, p. 7).

20

The undersigned therefore respectfully recommends that Defendants' motion for summary judgment on the section 502(a)(1)(B) claim be granted and that Plaintiff's motion for summary judgment on the same claim be denied. The Court finds that based on the preceding analysis with respect to the <u>Booth</u> factors, the Committee's determination to deny both Plaintiff's initial claim for severance benefits and the appeal was reasonable and was not an abuse of discretion.

### 2. Breach Of Fiduciary Duty Claim Under Section 502(a)(3)

The undersigned respectfully recommends that Plaintiff's motion for summary judgment on his claim for breach of fiduciary duty under ERISA section 502(a)(3) against Elsevier and against RELX and the Committee be denied. In order to succeed on a claim for equitable relief under section 502(a)(3) for breach of fiduciary duty, a beneficiary must demonstrate that ERISA has been violated. 29 U.S.C. § 1132(a)(3); <u>see</u> <u>Griggs v. E.I. DuPont de Nemours & Co.</u>, 237 F.3d 371, 384 (4th Cir. 2001) (section 502(a)(3) was meant to "provide[] individual beneficiaries with an avenue to seek equitable relief for a breach of fiduciary duty under ERISA"). However, where no breach of fiduciary duty has occurred, it stands to reason that Plaintiff will fail on a motion for summary judgment on his section 502(a)(3) claim.

First, the undersigned has reviewed the evidence in the administrative record regarding any alleged communication that Elsevier made to Zeckoski with respect to the effect that telling third parties that he had resigned would have on his entitlement to severance benefits. After this review, the undersigned is not convinced that there was any miscommunication or misrepresentation at all on Elsevier's part – rather, Elsevier made a truthful statement to Plaintiff. In Jeff Keating's Declaration, he states that "Mr. Zeckoski asked whether there would be a financial difference between resigning or being terminated and he was told no." (AR0118). This statement is true – whether Plaintiff resigned or was terminated for cause, he would be ineligible for severance

benefits under either scenario. Plaintiff's articulation of what he alleges Elsevier told him is no different: "Elsevier told Plaintiff if he agreed to inform external third parties that he resigned his employment, it would have no effect on his ability to receive Plan benefits." (Document No. 35-1, pp. 21-22). This representation is true – whether he represented to third parties that he resigned or was terminated for cause, he would not be entitled to severance benefits. "ERISA administrators have a fiduciary obligation not to misinform employees through material misrepresentations and incomplete, inconsistent or contradictory disclosures." <u>Griggs</u>, 237 F.3d at 380. Elsevier did none of the above – and therefore, any failure to monitor claim premised upon the alleged original misrepresentation would also fail as against RELX and the Committee.

Thus, the undersigned would respectfully recommend that Defendants' motion for summary judgment on Plaintiff's claim for breach of fiduciary duty under section 502(a)(3) against Elsevier for misrepresentation of information about Plan benefits and against RELX and the Committee for failing to monitor Elsevier should be granted and Plaintiff's motion on the same claim be denied.

### 3. Discharge On Account Of Interference With Rights Under The Plan Under Section 510

"ERISA guarantees that no employee will be terminated where the purpose of the discharge is the interference with one's pension rights." <u>Conkwright v. Westinghouse Elec. Corp.</u>, 933 F.2d 231, 239 (4th Cir. 1991). In order to demonstrate a prima facie case of discharge in order to interfere with a beneficiary's rights under an ERISA-governed plan, Plaintiff must prove three elements: (1) that he was a member of the protected class under section 510 – that is, that he was a beneficiary under the Plan; (2) "that [he] was qualified for the position;" and (3) that he was discharged "under circumstances that give rise to an inference of discrimination." <u>Henson v.</u>

Liggett Grp., Inc., 61 F.3d 270, 277 (4th Cir. 1995) (internal quotations and citations omitted); see 29 U.S.C. § 1140.  Furthermore, "to take advantage of § 510, one must prove a specific intent of the employer to interfere with an employee's pension rights."  Conkwright, 933 F.2d at 239.  A showing of specific intent uses the burden-shifting framework from the Title VII context:

> Thus, to take advantage of § 510, one must prove a specific intent of the employer to interfere with an employee's pension rights.  In seeking to prove specific intent, a claimant in the ERISA context confronts proof problems similar to those encountered by Title VII plaintiffs: employers rarely, if ever, memorialize their specific intent to act unlawfully.  For that reason, other courts considering § 510 claims have borrowed the Title VII, *McDonnell Douglas* scheme of proof for the purpose of proof…the *McDonnell Douglas* scheme of presumptions and shifting burdens of production is appropriate in the context of discriminatory discharge claims brought under § 510 of ERISA.

Id.

Under this burden-shifting framework, Plaintiff must first establish a prima facie case – which, as explained below, the undersigned concludes Plaintiff cannot do.  Even if he could, though, he would still have to rebut Defendants' "articulat[ion] [of] a legitimate reason for discharging [P]laintiff" – the two incidents of inappropriate comments made to female colleagues. (Document No. 34, pp. 10-11).  This is because once Defendants have articulated a legitimate reason for ending Plaintiff's employment, "the onus of proof shifts back to plaintiff to prove that he was a victim of" discharge to interfere with his ERISA rights.  Brewer v. Dana Corp. Spicer Heavy Axle Div., 205 F. Supp. 2d 511, 518 (W.D.N.C. 2002).  Plaintiff must therefore show that Elsevier's reasoning for his discharge and giving him the option to resign were "pretext" for interfering with his entitlement to severance benefits.  As explained below, Plaintiff cannot meet this burden.  Conkwright, 933 F.2d at 239.

According to Defendants, Plaintiff fails to make out a prima facie case under section 510 because he has not shown that "he was discharged under circumstances that give rise to an inference of discrimination." (Document No. 34, p. 30). Moreover, Elsevier argues that Plaintiff has not proven that Elsevier acted with the specific intent to discharge him in order to interfere with his severance benefits. Id.

Assuming without deciding that Plaintiff was able to satisfy the first and second elements of a prima facie case of discharge in violation of ERISA section 510 – that is, that he was a member of the protected class (he was a Plan beneficiary) and that he was qualified for the position – he would still fail on his motion for summary judgment on this claim. Plaintiff cannot demonstrate here that Elsevier had the specific intent of discharging him *in order to interfere* with his severance benefits. Plaintiff claims that he has shown specific intent: "[t]he fact that the statements [that Elsevier made to Plaintiff regarding his resignation not making any financial difference to him in terms of receipt of benefits and regarding his discharge] were made together (during the same meeting and while Elsevier informed Plaintiff of its termination of his employment) shows Elsevier's intent to interfere with Plaintiff's rights under the Plan." (Document No. 39, p. 24).

Contrary to Plaintiff's contentions, that is not the case. First, as discussed in the preceding section, Elsevier did not make any misrepresentations to Zeckoski regarding what would happen to his benefits were he to resign. See supra section 2. As Defendants contend, any communication that Elsevier made to Zeckoski regarding the financial consequences of a decision to represent to third parties that he had resigned were true – he would be ineligible for benefits whether he resigned or was terminated for cause, and thus, Elsevier accurately indicated that there was no financial difference between the scenarios. (Document No. 38, p. 26). Thus, Elsevier's communication cannot form the basis of any specific intent allegation that Plaintiff desires to level

24

against Elsevier – for there was nothing nefarious about Elsevier's statement. Furthermore, Plaintiff cannot rebut Defendants' legitimate reason for giving Plaintiff the option of either resigning or terminating his employment for cause – Zeckoski "made highly inappropriate statements to two different employees" within the span of just eight months. (Document No. 34, p. 13). His "own assertions and conclusions" are the only evidence that he offers in furtherance of his specific intent argument – which are plainly insufficient to survive summary judgment. Hearne v. United Parcel Service, Inc., 2007 WL 3287758, at *15 (E.D.N.C. Nov. 2, 2007).

Plaintiff's contention that he satisfies the specific intent requirement is therefore without merit – as is his argument that he has proved a prima facie case. Zeckoski cannot reasonably argue that he meets the third element of the prima facie case to show a section 510 violation – that he was discharged under circumstances giving rise to an inference of discrimination. For the same reasons that he cannot meet the specific intent requirement – that Elsevier made truthful statements to him about the impact of his decisions on his ineligibility for severance benefits – he also fails on the third element of the prima facie case. Thus, the undersigned respectfully recommends that Defendants' motion for summary judgment be granted on the section 510 claim and Plaintiff's motion be denied.

### 4. Plaintiff's Claim For Attorneys' Fees Under ERISA Section 502(g)

In order to obtain attorneys' fees under ERISA section 502(g), "a fees claimant must show some degree of success on the merits." Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 255 (2010); see also Williams, 609 F.3d at 634. As set forth in the sections above, the undersigned is respectfully recommending that summary judgment be granted for Defendants on each of Plaintiff's claims under ERISA. Therefore, it is evident that Plaintiff has not shown any degree of

success on the merits, and the undersigned thus respectfully recommends that Plaintiff's claim for section 502(g) attorneys' fees be denied.

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that "Defendants' Motion For Summary Judgment" (Document No. 33) be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that "Plaintiff's Motion For Summary Judgment" (Document No. 35) be **DENIED**.

## V. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); United States v. Benton, 523 F.3d 424, 428 (4th Cir. 2008). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Id. "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

**IT IS SO RECOMMENDED**.

Signed: September 29, 2021

David C. Keesler